As an initial matter, it must be emphasized that the decision the Court reaches in this case will not and cannot resolve a split in the districts regarding whether the no-question-ask, automatic statehood standard of Joshua A., or the traditional four-factor analysis for injunctive relief set forth in Johnson, applies to the statehood analysis. I didn't quite get your opening sentence. As an initial matter, it needs to be emphasized that the decision the Court reaches in this case will not and cannot resolve a split in the districts regarding whether the no-question-ask, automatic statehood standard of Joshua A., or the traditional four-factor analysis for injunctive relief set forth in Johnson, applies to the statehood analysis. You're saying the disparity in the district courts within the Ninth Circuit, is that what you're talking about? Yes. Okay. There is no disparity. Okay. The Ninth Circuit has set forth the... What was your reference to? Are you saying the district courts are interpreting the cases differently? I don't get your point then. The student has argued that this Court is in a position to resolve a split in the districts regarding whether the no-questions-ask, automatic statehood applies, or the traditional four-factor test applies. Oh, I see. So, but you are aware that we're here reviewing a preliminary injunction, which means that our review is extremely limited. Yes. Okay. And in this case, the district court applied... The Ninth Circuit has made clear the distinction when the two standards applies. When the question is the invocation of statehood, when does statehood apply? The automatic, no-questions-ask, statehood standard set forth in Joshua A., applies. When the question is one that affects statehood regarding the services, the program, the location, any of the factors that go into the placement, the traditional four-factor test for traditional injunctive relief under Johnson applies. You've lost me. Okay. There are two standards. The district court in this case applied the no-questions-ask, automatic statehood standard, but it was applied in this case, which is not requesting the invocation of statehood, but was requesting that... What do you mean by the invocation of statehood? You're using a series of words which are quite familiar to you on the assumption that they're quite familiar to us.  And I apologize. Why don't you tell us the facts? In this case, the student is requesting that her present non-public school be deemed the then-current educational placement for purposes of statehood. The district court interpreted that request as asking that statehood apply. But there is no question in this case that statehood applies. And statehood means that when a student, a special education student, brings an action, they are entitled to remain in their then-current educational placement during the pendency of those proceedings. But educational placement, in your view, is a term of art. Yes. And in this case, you're saying that that was not the educational placement. It was kind of a placeholder. Correct. There is no question in this case that statehood applies. Statehood was put in place the day she filed her due process complaint before the Office of Administrative Hearings. And now you lost me. Statehood is an automatic injunction when it applies. And it applies... It doesn't make a difference whether an ALJ has made a decision or not. It does make a difference. Oh, well, let's talk about that. Okay. In this case, what the student has asked for in her request for a temporary restraining order... What did the ALJ... What did the administrative officer decide? The ALJ decided that the student's present non-public school was not stay put. And why not? Because there was a specific agreement between the parents and the River Springs that it would be a temporary placement. And therefore, and the IDEA permits temporary placements, permits outside agreements for temporary placements. So your argument is because the parents and the district agreed to a temporary placement, it cannot be a stay put? Not necessarily, no. My argument for this case is that the district court judge made the affirmative decision on an ex parte basis, on an application for a temporary restraining order, that that was not a temporary placement, but that that was where the student was entitled to receive her education. Right. But my question to you is, you made a point of telling us about the agreement between the parents... Yes. ...and the school district, that this would be a temporary placement. Is it your position that a temporary placement may be a stay put? Under certain circumstances, it may be, certainly. Okay. Okay, if the parties had agreed that this was a stay put placement, then that would have been the status of that placement. Is that correct? Yes, it is correct. Okay, so is your argument that because the parties did not agree that this would be a stay put placement, that the district court judge had no basis upon which to decide that this was a stay put placement? Partly, yes. Okay. What's the rest of your argument, then? The district court judge should have, before making that determination, should have applied the traditional four factor test set forth in Johnson to determine whether the student had presented sufficient information to impose the extraordinary and drastic relief of a temporary restraining order. And that he was likely to win, or that she was likely to win. Yes, and there would be irreparable harm. Right. Isn't that the standard in the Ninth Circuit? Don't we apply that? Yes. When the ALJ has made a decision? Yes. Don't we have a case called N.E. through C.E. and P.E. versus Seattle School District, which holds exactly that? Yes. And the district court judge did not. That would have been really enlightening if you had told us that at the beginning. I was going to get there. I apologize. The district court judge should have applied that standard, and should have given due deference to the ALJ's decision and findings. Well, the district court in N.E. talked about a modified de novo review where the ALJ's decision was given some discretion, and then applied the four factor winter test to a preliminary injunction, and found that the student was not likely to succeed. And Judge Graber, for our court, accepted that. Correct. That's the standard we should be applying, is your claim, right? That is my claim. Thank you. Yes. I'm sorry that that was not clear. In this case, the district court judge did not consider the ALJ's, did not give due deference to the ALJ's findings, but simply, he did make a fleeting passing remark that he reviewed the ALJ's decision, but we don't know what he reviewed. We don't know the findings. We don't know what kind of consideration he gave them. And while the district court judge is certainly entitled to himself determine how much due, what is due, consideration, he's not entitled to ignore it altogether. Secondly, the failure to apply the four factors in this particular case resulted in awarding the exact affirmative relief that the plaintiff is requesting in the TRO, and in her first cause of action for declaratory relief, and in her second cause of action for injunctive relief. And this was done on an ex parte basis, on an automatic, no questions asked standard, and without, River Springs did not have the opportunity to present or to test the allegations, the factual and procedural allegations in the complaint, or to present evidence of its own. This was an ex parte hearing, and the judge awarded the very affirmative relief that the student was requesting, and in so doing, permitted the student to simply bypass the procedural and evidentiary requirements necessary to obtain the relief that she sought and seeks in her first cause of action for declaratory relief, and her second cause of action for injunctive relief, and which is the exact same relief she sought before the ALJ three times in which the ALJ denied three times. So in the decision, the trial court makes an affirmative finding that the student is in an educational institution that adhered to the terms of the IEP. That is a substantive finding, and again, made on a no questions asked, automatic, as no question asked, stay put, and should have been made upon proper motion, and certainly upon consideration of the four factors. When is an automatic stay put correct? When a student is asking for the imposition of stay put. For example, when the question, does stay put apply to a student who has aged out of Is stay put dissolved when the appeal is dismissed? I don't get the distinction you're trying to make. The question, does stay put apply, can easily be answered yes or no. Does it apply in this particular circumstance? Yes or no? In our case, and where the four factors apply, the question is Why do the four factors apply in your case, and not the automatic stay put in your case? Because the student in this case, there's no question that stay put was put into place. I use the word invoked, and I know that you've been hearing that all morning in the criminal context, but because stay put was put in place the day she filed her due process complaint before the OAH. The question, and the only dispute in this case, is what is stay put? What is the current educational placement? What was the last implemented IEP? Those are not yes or no questions, and in every case in which the automatic no questions asked stay is applied, it's very simple. Does stay put apply in this particular situation? Yes or no? We don't argue. Nobody disputes that stay put applies in this situation. Student filed a due process complaint, stay put applies. It applied the day she filed her due process complaint. But what you're saying is that stay put applies to the plan, not the particular place where she is. Stay put applies, and the question is, in this case, what is stay put? What is stay put? And that's the distinguishing difference between the no question asked automatic stay put of Joshua A., and the traditional four factor test for injunctive relief that should apply in this case. What are the potential answers in this case to the question of what is stay put? Well, that's a good question, and the district court judge sent forth a couple. I'm asking you. Okay. What are the potential answers in this case to the question that you posed, what is stay put? What is stay put could have been her present non-public school that was temporary. Which is what the district court judge decided. It should have been the last implemented IEP before that temporary placement, and that was the River Springs homeschool program. The district judge never considered that as an alternative, and by law and under the facts in this case, that would have been the stay put placement, because that was her placement in the last implemented IEP. Is that the stay put that the ALJ ordered? No. That's the problem. The ALJ did not make a stay put ruling. That's correct, and the student did not ask for a stay put ruling. The student only asked the ALJ to determine that her present non-public school was stay put, and the ALJ said, no, that's not stay put. And then she brought, you know, three times, tried to clarify it, but she never asked what is stay put. But she could have and should have, was obligated to ask, what is stay put? And could the district have asked that as well? The district was responding to the student's request. My question was, could the district have asked the ALJ to resolve that issue as well? I suppose, theoretically, the district could have. All right, do you want to save some time? I do, thank you. Good afternoon, Your Honors. May it please the Court. Not yet. Oh, a little early. Thank you. David Greco on behalf of Plaintiff and Appellee CQ. I'm here with Michelle Powers and Poonam Grewal, who represented CQ in the administrative hearings. To clarify the Court's initial concern, what is stay put? Stay put is an automatic injunction that applies across any and every dispute. When a student disputes the adequacy of their special education provisions, they are entitled to stay put in their then current educational placement, period. But that begs the question as to what is the then current educational placement? That's correct, Your Honor. And the then current educational placement in this case can only be Prentice. The IEP, the operative IEP in this case, superseded all prior IEPs. Was there an IEP? Was there an extant IEP in this case? Yes, there was an August IEP. And is that the one where the parties agreed that the Prentice placement would only be temporary? Not, well, they agreed that the parties would revisit the Prentice placement at a later date. Did the parties agree that the Prentice placement would not be a stay put? No. And the reason they did not agree that, Your Honor, is on the record here, the district court found that the parties had not agreed to the provision in the IEP that states that Prentice is not offering, or River Springs was not offering Prentice as a stay put placement. There is nothing in the IEP that indicates that the parties, specifically the Cazadas, accepted that offer to carve out Prentice. Did they sign it? They did, Your Honor. But why wouldn't that be an acceptance if they signed it? Well, if we're looking at that language, which is that River Springs does not offer Prentice as a stay put placement, it is vague as to whether the parties agreed to that provision of the contract. And the trial court made a factual finding that they did not. And so did the administrative law judge. What do we do with that? That Prentice was not a stay put placement. That will lead me actually into the reason that this carve out provision is, I think, unenforceable in entirety. The OAH's order resulted in the exact harm that stay put seeks to prevent. The OAH did not bother to place CQ anywhere. And that was the only other option aside from placing CQ at Prentice. Opposing counsel says that it was the obligation of the parents to request a stay put placement. What's your response to that? Well, the parents did request a stay put placement when they filed their due process and then But before the ALJ was a specific request made by the parents to designate Prentice as the stay put placement? The request was made for CQ to stay at Prentice. That's what stay put means. The current educational placement was Prentice. Why would the ALJ say that was not the stay put? The ALJ erroneously relied on two things. Two out of circuit cases, Verhoeven and I think the other one is Leonard. And then on this carve out provision. I can address each of those separately. I'll finish addressing the carve out provision first. The carve out provision, as I said before, was never accepted by CQ's parents according to the district court. And River Springs bears the obligation to show that that finding was clearly erroneous. Signature is pretty valid evidence. Well, the language of that provision is vague. And so the court made a finding about whether that language was part of the contract. And this court is bound by that factual finding unless it's clearly erroneous. Oh, no, we're not. I will say the other decision or the other reason that the OAH placed CQ nowhere and pulled her out of school, the exact harm that stay put is designed to prevent, was on these two out of circuit cases. Both of those cases are distinguishable. Both of those cases had specific deadlines on which the current placement would end. It was a timeline. It was a multistage IEP. Just like the Ninth Circuit case that we have, I believe it's NE, where a multistage IEP was validated. And found that the later placement outlined in the multistage IEP operated as stay put. There is no subsequent consented to placement here. The only placement that the parties consented to was Prentiss. What deference, if any, did the district court judge give to the ALJ determination? For purposes of my argument, Your Honor, I can say that Judge Otero reviewed the order. I can't say that he provided any deference to the ALJ because he did not have to. A stay put order is an order that is subject to appeal. And on appeal, so it was an appeal from the OAH to the district court, the standard of review remains the same. It remains the automatic injunction. There is no obligation in 1415J or any of the case law, Ninth Circuit binding case law, to provide deference to an OAH's finding, particularly in this case. But don't we have to at least review the decision to determine whether or not the decision is entitled to, regardless of the issue, whether or not that administrative decision is entitled to some deference? Certainly it has to be reviewed. But what I will say is – What did Judge Otero say about his review of that decision? You know, I do not recall off the top of my head, but what I can say is the OAH's decision, because it was so erroneous, taking CQ out of school was not entitled to any deference. And, in fact, that decision illustrates the fault in this carve-out provision. The fault in the carve-out provision was that there was nowhere for CQ to go if the parties entered a dispute and CQ moved for stay put. Again, the opposite of what the IDEA contemplates. So, counsel, what's your response regarding the failure of the district court to go through the injunction analysis? The injunction analysis applies only when a pre-existing adequate stay put order has already been issued. What case is that? That is Joshua A. and Johnson together. Those cases, when read side by side, that is what they say. And I can point the court to the language that says that. What do you do with N.E. v. Seattle School District? That's a district court case, N.E. v. Seattle? Are you talking about? The Court of Appeals case. Well, Your Honor. It's been affirmed. Yes. It's clear that in the district court, the district court judge applied the four-factor test. He used a modified de novo review and applied the four-factor test. Yes. Because the pre-existing stay put order, Your Honors, was adequate. In this case, in C.Q.'s case, there was no placement and so there was no adequate order to go beyond. The same is true. That's if you ignore the ALJ's decision. Right. Well, Your Honor, the ALJ's decision cannot be seen as adequate. She had no placement. It can't be seen under the goals of the IDEA for a student to be properly placed when she's not in school at all. That is the antithesis of what the IDEA contemplates. Well, the ALJ said the placement will be pursuant to the IEP, which will be not in Prentiss but in the public school. Correct? I don't think the ALJ said that, Your Honor. I think what the ALJ said is denied as to stay put. Well, but that was the effect of the denial. The effect of the denial was that C.Q. was removed from school altogether. And who made that decision? The decision was made by River Springs when they opposed the request for stay put. Who actually disenrolled the child from school? The parents had to. They had to. Right. It wasn't a parental choice. This wasn't a unilateral removal by the parents by any means. Under the IDEA, parents bear no obligation to pay for their student's education. So even if, and this is not in the record, but even if C.Q.'s parents could afford to privately place her at Prentiss, they have no obligation to do so. Well, they have no obligation if that's been determined to be the stay put school, but it wasn't in this case. At that time, the ALJ had determined that it was not the stay put school. So as of that time, the parents, the school district was not obligated to pay for Prentiss. At that point. And the appeal, and so C.Q. was removed from Prentiss and the appeal to the district court reversed that and placed her back at Prentiss. And the important thing to note here, and this is clear actually in the reply brief, often River Springs says the future placement was to be determined, so therefore there was a future placement. Alternatively, they concede that the OAH did not identify a placement. And then elsewhere. The school district identified a placement? The school district had not identified a placement. They claimed. I thought that was by the airport. They had offered FLABOB. That was never consented to by the parents. The impression was that no one had identified a placement. So if the Prentiss placement was not approved by the administrative law judge, then the school district was prepared to offer the placement that the parents were not willing to accept. Right. Which makes it a non-placement because placement requires parental consent under the IDEA. No IEP can be administered or finalized without consent of the parents. So the FLABOB offer, it has no bearing on what C.Q.'s placement is. I would like to return quickly to the point I was making in that elsewhere in the brief, River Springs purports that C.Q.'s placement is homeschool. So it's actually not clear even to River Springs where C.Q. would go if she didn't go to Prentiss because they say three different things in their brief. And the fact is the policy behind Stay Put is to maintain the status quo to ensure that a child is not treated as a ping pong ball ricocheting between placements with each new ruling. And if there's any dispute about where her placement is, then the tie, the ambiguity, it goes to C.Q. The IDEA was written for students, not for school districts. And that quote that I just gave you is from Ashland versus VM quoted by our amicus contributors at 494 F. Second, 182. I wanted to touch briefly on the notion that the district court's finding was an affirmative issuance of relief beyond that available in Stay Put. That argument cannot have any merit because if that same order, keeping C.Q. at Prentiss, was issued by the OAH, would then River Springs argue that the OAH had overstepped its bounds in issuing a Stay Put order in the first instance? No, they would not argue that. The fact that C.Q. got to stay at Prentiss was a correction of the OAH's failure to recognize any placement. So that argument has no merit. I did also want to point out that the concept of multistage IEPs, which is what we believe River Springs should have applied if they wished to create a truly temporary placement, it has been validated by the Ninth Circuit in NE versus Seattle, 842 F. Third, 1093. For some reason, at page 13 of River Springs' brief, they write, the concept of IEP stages does not appear anywhere in the IDEA or in any case law. Well, that is flatly incorrect. And I just wanted to call that out and point, Your Honors, to the NE case. That is the case that River Springs should have used if they wanted to create a truly temporary placement. That would fit this case into the molds of Leonard and Verhoeven as well. This case doesn't fit that mold because there was never a subsequent permanent agreed-to placement. The multiple different versions of what River Springs claims could be a placement are not tenable, given the district court's factual findings, the language of the only operative IEP. I just want to reinforce that the homeschool could not have been the current educational placement because that was superseded by the operative IEP that placed CQ at Prentice. When an IEP is superseded, consent for the prior IEP is revoked. So there was never any consent for a homeschool placement. I will say one last thing about the carve-out provision. If a parent is deemed to have waived the right to stay put, purely by the district inserting a clause into the notes saying, we are not offering this program for these circumstances, then effectively any student, any district could circumvent the statute and force a student into a unilateral replacement if the student asserted their rights, discouraging the student from asserting their rights. And with that, thank you. Thank you, counsel. Rebuttal. Thank you. Your Honors, the district court would have had to and did perform some pretty substantial linguistic contortions to find that the parents find that the Prentice placement was not temporary. The language is clear. It's temporary. And it would be an extraordinary misunderstanding. Wouldn't it be better to characterize it as indefinite? It had a definite placement. It didn't have a definite termination, though. It had a definite termination, I'm sorry. It did. In what way? The first semester of the 2017-2018 school year. Done. And the reason that that particular temporary placement came about was because the parties could not agree on a placement. It didn't indicate in the plan that it would be reviewed. It didn't say terminate. They were going to review it. It can be read, and that is how the district court read it. But the placement, that temporary placement, came about after months and months of the parties being unable to come to any agreement. The student says that we must have had a multistage IEP. That's simply not true. And in this particular case, it was not possible because there was no agreement. This was a temporary placement to satisfy the parents, really, for a temporary period of time while they continued to try to come to terms on a permanent placement. So was there? Did you come to terms with the parents on a permanent placement? No. Okay, so what were the parents to do if you didn't come to terms with them? What was the placement going to be? The placement reverts back, as a matter of law and under the facts of this case, it reverts back to the last implemented IEP, which was the River Springs Home School placement. The way student has characterized it is generally true, except and unless the parties otherwise agree. And in this particular case, the parties did otherwise agree very clearly on August 4th. And what is your response to opposing counsel's contention that the parents did not agree? They signed it, but the terms were not clear to them. I can only say that would be an extraordinary misunderstanding in the light of the clear and simple language. All right, thank you. Thank you. Thank you to both counsel. The case just argued is submitted for a decision by the court that completes our calendar for the day and for the week. We are adjourned. All rise.
judges: Rawlinson, Bea, Settle